UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAMIEN DARNELL HARRIS,<br><br>Petitioner,<br><br>v.<br><br>MIKE OBENLAND,<br><br>Respondent. | CASE NO. 3:15-cv-05191-RJB<br><br>ORDER DENYING § 2254 PETITION AND CERTIFICATE OF APPEALABILITY |

THIS ORDER follows the parties' opportunity to provide supplemental briefing to address three discrete subparts of Mr. Harris' request for writ of habeas corpus under § 2254. Dkt. 59. The Court denied the petition for writ as to all other subparts of Mr. Harris' Amended Petition for Writ of Habeas Corpus. Dkts. 52, 59. *See* Dkt. 32. Both Mr. Harris and the Government filed supplemental briefing, Dkts. 65, 66, which the Court has reviewed along with the remainder of the file herein.

The Court previously found that Mr. Harris had exhausted state remedies as to the following subparts: Ground 2, Part 1; Ground 2, Part 2; and Ground 8, Part 1. Dkts. 52, 59. *See*

Dkt. 32. The Government's initial briefing did not address the merits of any of these three subparts, so the Court gave the parties an opportunity to provide supplemental briefing. *Id*.

The Court will discuss relevant facts and procedural history with respect to each subpart, rather than attempting to summarize an extensive case history and trial.

A. Ground 2, Part 1 (Confrontation Clause, "10[1] missing witnesses")

In the Amended Petition, Mr. Harris argues that his 6th Amendment right to confront witnesses was violated, when "police testified to ten missing witnesses statement of what they admitted to, confirmed, described, or purchased[.]" Dkt. 32, at 7; Dkt. 66, at 14, 15.

**1) Kyle Britton**

Detective Randy Hedin-Baughn testified that he observed Kyle Britton to be the driver of a car in which police found crack cocaine. Tr. 1016. The detective testified that the crack cocaine belonged to the passenger, Austin Slater, who obtained it from Mr. Adrian Morris, not Mr. Harris. Tr. 1016-17. The detective did not testify to any statements made by Kyle Britton.

Because the government did not introduce any statements made by Kyle Britton, Mr. Harris was not denied an opportunity to cross-examine a declarant, and no Confrontation Clause violation occurred.

**2) Saw Chamrouen**

Detective Jason Casebolt testified that he interviewed an inmate, Saw Chamroeun, because "it was alleged that [Mr. Chamrouen] had been contacted by Mr. Harris while they were incarcerated . . . for the purposes of retaliating against witnesses." Tr. 1061. The detective testified that he discussed "this matter" with Mr. Chamrouen, but Mr. Harris' attorney objected

[1] For reasons not apparent to the Court, the parties briefed eleven, not ten, witnesses.

prior to any testimony about the content of their conversation. Tr. 1062. The detective also testified that Mr. Chamrouen was not cooperative in giving him information about Mr. Harris. *Id*.

No statements by Mr. Chamroeun against Mr. Harris were admitted through Detective Casebolt's testimony. The detective's testimony that Mr. Chamroeun did not speak cooperatively with the detective is admissible evidence, because it is based on the detective's personal knowledge and does not relate to any statements by Mr. Chamroeun. FRE 602. Mr. Harris was not denied the opportunity to cross-examine Mr. Chamroeun, because Mr. Chamroeun was never a witness against Mr. Harris.

**3) Laura Garcia**

Detective Casebolt testified that he interviewed Laura Garcia, an AT&T employee, about her interactions with Mr. Morris and Mr. Boyer. Tr. 1059. According to the detective's testimony, Ms. Garcia verbally admitted to him that she illegally provided phone records to Mr. Morris and Mr. Boyer of Austin Slater, who Mr. Morris and Mr. Boyer suspected of working for law enforcement. Tr. 1060. Austin Slater obtained crack cocaine from Mr. Morris, not Mr. Harris, according to the testimony of Detective Casebolt. Tr. 1016-17.

The only statement that Ms. Garcia made that was admitted through the detective's testimony is her admission to illegally providing phone records, but that statement is against Ms. Garcia's interest and falls under a hearsay exception. FRE 804(b). Even if the statement did not fall under the exception, the statement inculpates Mr. Morris, who sold the crack cocaine to Mr. Slater, not Mr. Harris, so the statement was not made against Mr. Harris. Ms. Garcia was not a witness against Mr. Harris.

**4) Ryland Kirkpatrick**

Detective Matt Renschler testified that Ryland Kirkpatrick was a drug seller known to Mr. Boyer. Tr. 884. Testimony about the relationship between Mr. Kirkpatrick and Mr. Harris is as follows:

> Q: . . . When you checked with Ryland Fitzpatrick, did you receive any information regarding Damien Harris frequenting his place?
>
> A: To the best of my recollection, when I was following up with Mr. Fitzpatrick, I was focusing on the activities of Mr. Morris.
>
> Q: So Mr. Harris is not mentioned in your report?
>
> A: I don't believe so, no, sir, as far as it relates to my conversations with Mr. Fitzpatrick. Tr. 955.

No statements of Mr. Kirkpatrick were introduced at trial connecting him to Mr. Harris, so no confrontation rights were implicated. In fact, the record shows that the detective explicitly disavowed any connection between Mr. Kirkpatrick, a known drug dealer, and Mr. Harris.

**5) Christina Lamano**

In response to a report by Kathy Kruse that Mr. Morris had tried to force his way into her apartment, Detective Renschler arrested Mr. Morris following a traffic stop. Tr. 818, 820, 825, 826. Christina Lamano was seated in the front right passenger seat of the same car, and Detective Renschler interviewed Ms. Lamano at the scene of the arrest. Tr. 826. He discussed "her knowledge about Mr. Morris' activity with relationship to crack cocaine and Mr. Boyer," which gave rise to the detective's suspicion that there could be controlled substances in that vehicle. Tr. 827.

Detective Renschler testified that Ms. Lamano "confirmed" the relationship of Mr. Boyer and Mr. Morris to crack cocaine, but the detective makes no mention of any statements by Ms.

Lamano about Mr. Harris, so Mr. Harris was not deprived of the right to confront a witness testifying against him.

**6) Marcus Mathews**

Detective Renschler testified to the following:

Q: Did you eventually contact Mr. Mathews?

A: Yes, I did.

Q: Who led you to Mr. Mathews?

A: Mr. Boyer.

. . .

Q: Did you discuss with him the nature of the information as you know it from Mr. Boyer?

A: Yes.

Q: In your interview with Mr. Mathews, did some parts of his story match up with what Mr. Boyer was telling you?

A: Yeah. Mr. Boyer described a specific incident to me where a transaction took place which was confirmed through approximate time, date and location during my conversation with Marcus Mathews.

Q: I guess let me try to come back to that in a minute. Let's deal [with another topic]. Tr. 894-95.

Following that exchange, the remainder of the direct examination of Detective Renschler focused on letters allegedly written by Mr. Harris, with no further questions asked about Mr. Mathews. *See* Tr. 895-926.

Mr. Mathews was not a witness adverse to Mr. Harris, because no statements of Mr. Mathews were admitted as evidence. Even if the fact that "parts of [Mr. Mathews'] story match[ed] up with what Mr. Boyer" told the detective is considered a statement against Mr. Harris, there is no description of what parts of the stories align, so Mr. Harris has not made a

sufficient showing of prejudice. The vague connection between witness' stories is an insufficient basis to find that Mr. Harris was deprived of an opportunity to confront witnesses.

**7) Austin Slater**

According to the trial testimony of Detective Hedin-Baughn and Detective Casebolt, Austin Slater was arrested for possession of crack cocaine purchased from Mr. Morris, not Mr. Harris. Tr. 849, 1016-17, 1040. Although Mr. Harris was convicted of unlawful possession of cocaine with intent to deliver (Count V) and two counts of unlawful delivery of cocaine (Counts III, IV), these convictions were for selling crack cocaine to individuals other than Mr. Slater.

The record is devoid of any testimony by law enforcement that introduces a statement made by Mr. Slater connecting Mr. Harris to his convictions, so Mr. Harris was not deprived of his right to confront witness against him.

**8) Suzette Stevens**

Concerning Suzette Stevens, the past girlfriend of Kevin Watkins, a known crack cocaine producer, Detective Casebolt testified as follows:

> Q: When you contacted Ms. Stevens, did you have some conversation with her about her knowledge of crack cocaine being produced by Mr. Watkins for Mr. Harris and Mr. Boyer?
>
> A: Yes, I did.
>
> . . .
>
> Q: Was [Ms. Stevens] able to confirm information that you had received from Mr. Watkins?
>
> A: Yes, she did. Tr. 1055.

This testimony establishes only that the detective "ha[d] some conversation with [Ms. Stevens] about her knowledge," but it provides no detail about the substance of Ms. Steven's statements to the detective. At best, the trial record shows that Ms. Stevens "confirm[ed]

information that [the detective] had received from Mr. Watkins," which does not rise to the level of prejudice required for a § 2254 petition. Mr. Watkins' testimony provided sufficient evidence to establish that Mr. Watkins personally cooked crack cocaine for Mr. Harris, so admission of testimony from Detective Casebolt that Ms. Harris "confirmed information" generally was not an error that had a "substantial and injurious effect or influence" on the determination of the verdict. *Brecht*, 705 U.S. 619, 637 (1993).

**9) Jerry Walker**

Detective Renschler testified that Jerry Walker was a confidential informant used to arrange a controlled buy of guns and OxyContin from Mr. Boyer. Tr. 836. Mr. Boyer was the target of the operation, which was directed at Mr. Boyer's residence. Tr. 837. At the time that Mr. Walker made his purchase, no one else was at the residence except Mr. Boyer and Mr. Morris. Tr. 845-46.

The record does not reflect any statements made by Mr. Walker against Mr. Harris and admitted through Detective Renschler's testimony. Mr. Walker purchased drugs from Mr. Boyer and possibly Mr. Morris, not Mr. Harris. Mr. Walker was not a witness against Mr. Harris.

**10) Richard Winkle**

Detective Casebolt testified about Richard Winkle as follows:

Q: Why were you attempting to contact Mr. Winkle?

A: Because through our investigation, it was learned or it was alleged that Mr. Winkle was holding a weapon for Mr. Harris.

Q: Did you contact Mr. Winkle?

A: Yes, I did.

Q: Did you discuss the subject matter of whether Mr. Winkle at one time had a firearm belonging to Mr. Harris?

A: That is correct, yes.

. . .

Q: In your conversations with Mr. Winkle, did he confirm the information about the gun?

[Defense hearsay objection made, but overruled]

A: Yes, he did. Tr. 1056-57.

While counsel for Mr. Harris objected to Detective Casebolt's testimony on hearsay grounds, preserving the issue for appeal, Mr. Harris was acquitted, not convicted, of the crime of unlawful possession of a firearm (Count II). Ex. 3. Further, insofar as the gun could relate to other crimes, such as leading organized crime (Count I) or solicitation to commit first degree murder (Count IX), the detective's testimony about Mr. Winkle's statement established only that Mr. Winkle held a firearm belonging to Mr. Harris at some point in time, without discussing specifics about which gun, the purpose of holding the gun, or other details that would be germane to elements of other charges. Mr. Harris has not shown, nor can this Court identify, a substantial and injurious effect or influence of the admission of Mr. Winkle's statement on the determination of the verdicts.

**11) Jimmy Winsell**

Detective Casebolt testified that Jimmy Winsell, a heavy crack cocaine user, was involved with Mr. Morris, from whom he purchased crack cocaine. Tr. 1058. The purchase followed an undercover investigation of Mr. Boyer at Mr. Boyer's residence. Tr. 1058.

The record establishes that Mr. Winsell may have been an out of court witness adverse to the interests of Mr. Morris or Mr. Boyer, but not Mr. Harris. Mr. Harris was not denied an opportunity to confront a witness against him.

As to this subpart, the petition should be denied.

B. <u>Ground 2, Part 2 (Confrontation Clause, Confidential Informant Scott Uchida)</u>

In the Amended Petition, Mr. Harris argues that his 6th Amendment right to confront witnesses was violated when he was not afforded the chance to confront a confidential informant, Scott Uchida, who Mr. Harris alleges was in DOC custody and could have been transported for trial. Dkt. 32, at 7. Mr. Uchida was, according to Petitioner, "the informant who provided St. Ex. 108 at trial and was given a plea deal." *Id*. There was no mention of Mr. Uchida anywhere during trial. *See* Ex. 33. However, after sentencing, in Mr. Harris' allocution, Mr. Harris insisted that he had wanted to call Mr. Uchida as a witness but that his attorney "declined to call" him. Ex. 36, at 27.

Although not completely clear from Mr. Harris' briefing, it appears that Mr. Harris alleges a confrontation clause violation occurred where Mr. Harris was unable to cross-examine Mr. Uchida about State Exhibit 108, a letter that Mr. Uchida apparently provided to police but whose authorship Mr. Harris contests. However, no testimony of Mr. Uchida was introduced at trial, so Mr. Harris was not deprived of an opportunity to confront a witness against him.

Mr. Harris raises his confrontation clause challenge under the 6th Amendment, which also protects the right to call witnesses in a defense. However, were the Court to interpret Mr. Harris' 6th Amendment challenge as a claim that he was denied his right to call Mr. Uchida as part of his defense, Mr. Harris does not make a sufficient showing that the state court reached a result contrary to, or an unreasonable application, of clearly established federal law. With reference to Mr. Uchida, the record is scant, at best. Mr. Harris only mentioned Mr. Uchida one time, and it was made post-sentencing without any attempt at develop the kind of record necessary to preserve an issue for appeal. Mr. Harris did not, for example, articulate details about failed efforts to convince his attorney to call Mr. Uchida as a witness, Mr. Uchida's whereabouts and availability, or the expected content and purpose of Mr. Uchida's testimony. *See* Dkt. 33, at 27.

As to this subpart, the petition should be denied.

C. Ground 8, Part 1 (Ineffective Assistance of Counsel, Search Warrant 08-152)

In the Amended Petition, Mr. Harris argues that he was denied Due Process by ineffective assistance of counsel, where Mr. Harris' counsel failed to move to suppress warrant 08-152, which authorized the search of Kathy Kruse's apartment. *See* Dkt. 32, at 15; Dkt. 66, at 2-13. Mr. Harris identifies numerous pieces of evidence that he argues would have been suppressed if his attorney had only challenged warrant 08-152. Dkt. 66, at 13.

The seminal ineffective of counsel case, *Strickland v. Washington*, 466 U.S. 668 (1984) sets out a two-prong test, where defendants must show (1) deficient performance and (2) prejudice. Counsel must have performed below an objective standard of reasonableness, and, but for that performance, there was a reasonable probability of a different outcome in the case. *Id*.

Mr. Harris' petition fails under both prongs. Mr. Harris has not identified reasonably apparent defects in warrant 08-152, nor has he shown that challenging that warrant would have suppressed evidence of any value. Mr. Harris' attorney competently challenged warrant 08-158, which authorized the search of a safe deposit box, Exs. 27, 28, but after executing warrant 08-152, law enforcement testified that they found nothing of evidentiary value in Ms. Kruse's apartment. Ex. 28, at 138. Therefore, it cannot be said that the failure to challenge warrant 08-152 fell below an objective standard of reasonableness, nor that there was any evidence adverse to Mr. Harris in the Kruse apartment.

Mr. Harris argues that the police interview with Ms. Kruse contemporaneous to the execution of the warrant 08-152 should be suppressed as fruit of the poisonous tree. Unlike the search of Ms. Kruse's apartment under warrant 08-152, which did not yield significant evidentiary results, the police interview of Ms. Kruse did result in important evidence, but again,

Mr. Harris has not identified any reasonably visible defects in warrant 08-152 such that his attorney's failure to challenge that warrant fell below the objective standard of reasonableness. Even if Mr. Harris had identified such defects, whether Ms. Kruse's statements would have been suppressed is still unclear, because of the showing required to suppress evidence not found within the warrant itself. *U.S. v. Ceccolini*, 435 U.S. 268 (1978) (evaluating the link between an illegal search and excluding live witness testimony may include weighing: the witness' degree of free will; the witness' willingness to testify; and the time, place, and manner of the initial questioning).

In ineffective assistance of counsel petitions brought under § 2254, this Court must be doubly deferential to the state court, *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), and Mr. Harris has not met his burden. As to this subpart, the petition should be denied.

* * *

The Court previously denied the petition for habeas relief as to all subparts, except for the three subparts requiring further briefing (Ground 2, Part 1; Ground 2, Part 2; Ground 8, Part 1), Dkts. 52, 59, all three of which are now HEREBY DENIED. Therefore, the Amended Petition for Habeas Relief Under § 2254 is DENIED.

The Court previously denied the certificate of appealability for habeas relief as to all subparts, except for three subparts requiring further briefing (Ground 2, Part 1; Ground 2, Part 2; Ground 8, Part 1), Dkts. 52, 59, which are now denied. Mr. Harris has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Therefore, the request for a certificate of appealability in this matter is DENIED.

This case is CLOSED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 25th day of April, 2016.

ROBERT J. BRYAN
United States District Judge